# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| SONIA IVETTE VEGA,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 1:20-CV-01934-JRA<br><br>JUDGE JOHN R. ADAMS<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

Plaintiff Sonia Ivette Vega filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision denying disability insurance benefits ("DIB") and supplemental security income ("SSI"). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On August 31, 2020, pursuant to Local Rule 72.2, this matter was referred to a Magistrate Judge for preparation of a report and recommendation, and was subsequently reassigned to me pursuant to General Order 2021-06. (Non-document entry dated May 25, 2021). Following review, and for the reasons stated below, I recommend the District Court **AFFIRM** the Commissioner's decision.

1

PROCEDURAL BACKGROUND

Ms. Vega filed for DIB and SSI on July 12, 2018, alleging a disability onset date of February 12, 2016.[1] (Tr. 258-61, 262-67). Her claims were denied initially and on reconsideration. (Tr. 112-13, 140-41). She then requested a hearing before an administrative law judge. (Tr. 174-75). Ms. Vega (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on October 2, 2019. (Tr. 34-61). In a November 5, 2019 written decision, the ALJ found Ms. Vega not disabled. (Tr. 12-33). The Appeals Council denied Ms. Vega's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-6; *see* 20 C.F.R. §§ 404.955, 404.981). Ms. Vega timely filed this action on August 29, 2020. (ECF #1).

FACTUAL BACKGROUND[2]

I. ADMINISTRATIVE HEARING

The following summarizes the testimony of VE George Coleman III, presented during the hearing before the ALJ.

Before addressing the particulars of Ms. Vega's claim, the ALJ instructed the VE to advise her, during the course of the VE's testimony, if any of his testimony contradicts the Dictionary of Occupational Titles ("DOT"). (Tr. 55). The VE acknowledged this instruction. (*Id.*).

---

[1] Ms. Vega claimed her alleged disability began February 12, 2016. In November 2015, Ms. Vega filed prior applications for DIB and SSI. (Tr. 15). A prior unfavorable decision was issued by a different ALJ on November 28, 2017. (Tr. 62-81). Ms. Vega concedes her current claims are barred by the doctrine of *res judicata* through November 28, 2017. (Pl.'s Br., ECF #14, PageID 706-707). The ALJ's decision in this matter addresses only Ms. Vega's current applications for DIB and SSI since November 29, 2017. (Tr. 15).

[2] In her sole assignment of error, Ms. Vega asserts the ALJ erred by relying on the VE's testimony and the jobs identified therein. Ms. Vega and the Commissioner limited their statement of facts to the VE's testimony at the administrative hearing. Accordingly, I do the same here.

The ALJ established Ms. Vega's past relevant work as a home care attendant and a bench assembler. (Tr. 56). She then posed the following hypothetical individual and asked the VE if such an individual could perform Ms. Vega's past relevant work: an individual of Ms. Vega's age, education, and work experience who can perform the full range of medium work with additional limitations. (*Id.*) Those limitations include that the individual is unlimited in pushing and pulling other than the lift and/or carry limits established under the medium exertional level; can frequently climb ramps and stairs; can frequently stoop, kneel, crouch, and crawl; must avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation; can perform simple, routine tasks or unskilled work with no fast pace or high-production quotas, and with infrequent changes where changes can be explained with superficial interaction with others, meaning a short duration for a specific purpose; and can perform low-stress work, meaning no arbitration, negotiation, responsibility for the safety of others, or supervisory responsibility. (*Id.*). The VE responded that such an individual could not perform Ms. Vega's past relevant work. (Tr. 57). The VE identified three positions the hypothetical individual could perform, including a linen room attendant (Specific Vocational Preparation ("SVP") 2, unskilled), a dishwasher (SVP 2, unskilled), and a kitchen helper (SVP 2, unskilled). (*Id.*)

Ms. Vega's counsel cross-examined the VE. The VE agreed that a limitation to simple, routine tasks would preclude the ability to carry out detailed written and oral instructions. (Tr. 59). The VE testified that all jobs in the DOT have an SVP and a reasoning level requirement. (*Id.*) He also agreed that the SVP refers to the amount of time it takes to learn a job, whereas the General Educational Development ("GED") reasoning scale reflects the aspects of education, both formal and informal, that are required for satisfactory performance. (*Id.*).

## THE ALJ'S DECISION

The ALJ's decision included the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2017.

2. The claimant has not engaged in substantial gainful activity since November 29, 2017 (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; osteoarthritis and allied disorders; obesity; chronic obstructive pulmonary disease; depressive, bipolar and related disorders; anxiety and obsessive-compulsive disorders; and trauma and stressor-related disorders (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant is unlimited in pushing and pulling other than shown for lift and/or carry (that is, 50 pounds occasionally and 25 pounds frequently, consistent with medium work). The claimant can frequently climb ramps and stairs, frequently climb ladders, ropes, or scaffolds, and frequently stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. The claimant can perform simple, routine tasks (unskilled work) with no fast pace or high production quotas and with infrequent changes where changes can be explained, with superficial interaction with others meaning a short duration for a specific purpose. The claimant can perform low stress work, meaning no arbitration, negotiation, responsibility for the safety of others, or supervisory responsibility.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 19, 1961 and was 56 years old, which is defined as an individual of advanced age, on November 29, 2017 (20 CFR 404.1563 and 416.963).

    8.        The claimant has a limited education and is able to communicate in English. (20 CFR 404.1564 and 416.964).

    9.        Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

    10.       Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

    11.       The claimant has not been under a disability, as defined in the Social Security Act, from November 29, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 18-28).

## STANDARD OF REVIEW

In reviewing a denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*,

889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted). Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

6

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) and 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

7

DISCUSSION

Ms. Vega argues the ALJ erred in relying on testimony from the VE that Ms. Vega could perform other jobs. (Pl.'s Br., ECF #14, PageID 710). She notes the jobs posited by the VE are classified as Reasoning Level 2 or Level 3 positions.

Ms. Vega claims there is an inconsistency between the VE's testimony and the DOT. Noting the VE's testimony that a restriction to perform simple, routine tasks would preclude the ability to carry out detailed written and oral instructions, Ms. Vega contends the ALJ erred in relying on the VE's determination that Ms. Vega could perform jobs classified at Reasoning Levels 2 and 3, and failed to address and resolve the inconsistency. The Commissioner replies that there is no conflict between the VE's testimony and the DOT; even if there was a conflict, it was not apparent, and therefore, the ALJ was not required to resolve it; and finally, if there was an apparent conflict, Ms. Vega waived her right to object on appeal by not doing so at the hearing. (Comm'r Br., ECF #15, PageID 721).

I. **Case law holds that a conflict exists between simple, routine tasks and Reasoning Levels 2 and 3.**

The DOT describes the GED component of a claimant's abilities as having three divisions: Reasoning Development, Mathematical Development, and Language Development. *Dictionary of Occupational Titles*, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (Jan. 1, 2016). The Reasoning Development division of the DOT has six levels, in ascending order of ability.

Pertinent to this case, Level 1 includes the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions"; Level 2 includes the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions";

8

and Level 3 includes the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form." *Id.* According to the DOT, a linen room attendant requires a Reasoning Level of 3, whereas the dishwasher and kitchen helper positions require a Reasoning Level of 2. *See* 1991 WL 672098, 1991 WL 672755, and 1991 WL 672752.

The Commissioner argues "[t]here is no contradiction between a job that involves simple, routine tasks and reasoning level of 2 or 3." (Comm'r Br., ECF #15, PageID 721). As it turns out, this is a more nuanced issue than the Commissioner presents. Some courts have indicated that a limitation to simple one- or two-step instructions does conflict with jobs requiring Reasoning Level 2. *See, e.g., Rodriguez v. Comm'r of Soc. Sec.*, 3:11-CV-398, 2012 WL 380275 (N.D. Ohio Feb. 6, 2012). Other courts have found that Reasoning Level 2 is consistent with the ability to perform one- or two-step tasks or simple, routine tasks. *See, e.g., Cooper v. Comm'r of Soc. Sec.*, 3:07-CV-300, 2008 WL 4405045, at *10 (S.D. Ohio Sept. 24, 2008) ("Plaintiff's limitation to low stress work with no production quotas, simple one- or two-step tasks, requiring little, if any, concentration, and no complex or detailed instructions is not inconsistent with the ability to perform jobs with a Reasoning Level 2.").

Like the *Cooper* Court, I find the reasoning of *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983–85 (C.D. Cal. 2005), probative on this issue:

> This leaves the question of whether the vocational expert's opinion contradicted the DOT's descriptions for Meissl's other work as a stuffer given the ALJ's RFC finding limiting Meissl to "simple, repetitive" tasks. The Court finds that it does not.
>
> As one goes up the numerical reasoning development scale used by the DOT, the level of detail involved in performing the job increases while the job task becomes less routine. For example, a job with a reasoning level of one only requires that the worker be able to "[a]pply commonsense understanding to carry out simple one-or two-step instructions" in "standardized situations with occasional or no variables." DOT at 1011. In contrast, a job with a reasoning level of three would require that

9

the worker "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and deal "with problems involving several concrete variables ...." DOT at 1011. The middle ground between these two points is also where the vocational expert identified a job with the lowest reasoning development score that Meissl could perform, namely a stuffer.

A job with a reasoning level of two requires that the worker "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and deal with problems "involving a few concrete variables ...." DOT at 1011. Thus, such a job would involve more detail, as well as a few more variables, than that with a reasoning level of one. The question becomes whether a person limited to carrying out simple, repetitive instructions could still perform a job with such a reasoning score.

Meissl focuses on the fact that the DOT description for a reasoning level of 2 uses the word "detailed." Essentially, Meissl seeks to equate the DOT's use of the word "detailed" with the Social Security regulations' use of the word "detailed instructions" in formulating a claimant's mental RFC. The Court is not convinced that such a neat, one-to-one parallel exists between the two.

The Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: "short and simple instructions" and "detailed" or "complex" instructions. 20 C.F.R. § 416.969a(c)(1)(iii); see also 20 C.F.R. part 404, subpart P, Appendix 1, Listing 12.00C(3) ("You may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks"). The DOT, on the other hand, employs a much more graduated, measured and finely tuned scale starting from the most mundane ("simple one- or two-step instructions" at level one), moving up to the most complex ("applying principles of logical or scientific thinking ... apprehend the most abstruse classes of concepts" at level six). DOT at 1010–1011. To equate the Social Security regulations' use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail." Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.

Even more problematic for Meissl's position is that she ignores the qualifier the DOT places on the term "detailed" as also being "uninvolved." This qualifier certainly calls into question any attempt to equate the Social Security regulations' use of the term "detailed" with the DOT's use of that term in the reasoning levels. Instead of simply seeking to equate the two scales based on the serendipity that they happen to employ the same word choice, a much more careful analysis is required in comparing the claimant's RFC with the DOT's reasoning scale.

10

Here, the ALJ found that Meissl could perform not just simple tasks but also ones that had some element of repetitiveness to them. A reasoning level of one on the DOT scale requires slightly less than this level of reasoning. While reasoning level two notes the worker must be able to follow "detailed" instructions, it also (as previously noted) downplayed the rigorousness of those instructions by labeling them as being "uninvolved."

The Court finds that there is much to recommend for believing that Meissl's reasoning level is at level two rather than at level one. A reasoning level of one indicates, both by the fact that it is the lowest rung on the development scale as well as the fairly limited reasoning required to do the job, as applying to the most elementary of occupations; only the slightest bit of rote reasoning being required. For example, the DOT describes the following jobs as requiring only a reasoning level of one: Counting cows as they come off a truck (job title Checker (motor trans.)); pasting labels on filled whiskey bottles (job title Bottling-Line Attendant (beverage)); and tapping the lid of cans with a stick (job title Vacuum Tester, Cans). *See* DOT at 931, 936, 938. Someone able to perform simple, repetitive instructions indicates a level of reasoning sophistication above those listed. Other courts have so held. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that "level-two reasoning appears more consistent with Plaintiff's RFC" to "simple and routine work tasks"); *Money v. Barnhart*, 91 Fed. App'x 210, 214, 2004 WL 362291, at *3 (3rd Cir. 2004) ("Working at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive"). As one court explained:

> The ALJ's limitation for the Plaintiff, with respect to an appropriate reasoning level, was that she could perform work which involved simple, routine, repetitive, concrete, tangible tasks. Therefore, the DOT's level two reasoning requirement did not conflict with the ALJ's prescribed limitation. Although the DOT definition does state that the job requires the understanding to carry out detailed instructions, it specifically caveats that the instructions would be uninvolved—that is, not a high level of reasoning. *Flaherty v. Halter*, 182 F.Supp.2d 824, 850 (D. Minn. 2001).

Therefore, the Commissioner's assertion that *no* contradiction exists between a job that involves simple, routine tasks and a job requiring Reasoning Level 2 and Reasoning Level 3 is an overstatement of the issue. There may indeed be a conflict between the two, as *Meissl* indicates. But my disagreement with this portion of the Commissioner's argument notwithstanding, for the reasons that follow, I find that the ALJ did not err in Ms. Vega's case.

11

**II.     There was no apparent conflict for the ALJ to resolve.**

Social Security Ruling 00-4p clarifies, *inter alia*, SSA's standards for use of VEs who provide evidence before ALJs. In pertinent part, the Ruling states as follows:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between the VE of VS evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the [ALJ's] duty to develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p. Moreover, when the VE provides evidence about the requirements of a job or occupation, the ALJ has an affirmative responsibility to ask about any possible conflict between the VE evidence and information provided in the DOT. *Id.* The ALJ must explain how she resolved the conflict regardless of how the conflict was identified. *Id.* An ALJ's duty to resolve a conflict between the VE testimony and the DOT arises when the conflict is apparent to the ALJ. SSR 00-4p. Moreover, the ALJ does not have a duty to investigate independently a VE's response to determine if it is accurate. *See, e.g., Martin v. Comm'r of Soc. Sec.*, 170 Fed. App'x 369, 374 (6th Cir. 2006); *see also Dyer v. Soc. Sec. Admin.*, 586 Fed. Appx. 422 (6th Cir. 2014) (holding that an ALJ is not required to investigate further alleged conflicts in a VE's testimony absent any objection or request for clarification or follow up by the claimant's counsel where the ALJ had asked the VE if her testimony was consistent with the DOT). Thus, when the alleged conflict is not brought to the attention of the ALJ, the ALJ does not have a duty to explain how any apparent conflict was resolved. *Id.*

Here, the ALJ instructed the VE to inform her if any of the VE's testimony was inconsistent with the DOT. (Tr. 55). The VE acknowledged the instruction and did not identify

12

any testimony as inconsistent with the DOT. (*Id.*). In response to the ALJ's hypothetical individual, the VE identified three positions the hypothetical individual could perform. (Tr. 57). For each identified position, the VE listed the occupational code number designated by the DOT, the occupation's SVP, the skill level of the occupation (unskilled, semi-skilled), the exertional level, and the number of jobs in the national economy.

On cross-examination, Ms. Vega's counsel asked the VE if "a limitation to simple, routine tasks would preclude the ability to carry out detailed written and oral instructions," to which the VE responded affirmatively. Ms. Vega's counsel confirmed with the VE that all occupations listed in the DOT have an SVP and a reasoning level requirement, where the SVP accounts for the time it takes to learn the job and the reasoning level reflects aspects of education required for satisfactory performance. (Tr. 59). At the hearing, counsel did not object when the VE did not identify inconsistencies between his testimony and the DOT, did not ask the VE about the reasoning levels for the identified positions, and did not ask the VE if the limitation to "simple, routine tasks" was inconsistent with occupations characterized by a Reasoning Level of 2.

Ms. Vega argues "the VE's testimony that a limitation to simple, routine tasks precludes performance of jobs requiring the ability to carry out detailed written and oral instructions, *i.e.*, that carry a R2 level classification or higher, creates an apparent inconsistency with the DOT[.]" (Pl.'s Br., ECF #14, PageID 712). Here, she equates "detailed written and oral instructions" with Reasoning Level 2. However, the question to the VE inaccurately portrayed the DOT's definition of Reasoning Level 2. As noted above, a Reasoning Level 2 requires an individual to "apply commonsense understanding to carry out detailed *but uninvolved* written or oral instructions."

13

It would be unreasonable to conclude the alleged inconsistency was apparent after cross-examination when nothing in the exchange could have alerted the ALJ to a possible conflict with the RFC and the DOT's reasoning levels. Having not been alerted to an apparent conflict, the ALJ did not have a duty to explain how the conflict was resolved.

**III.  Ms. Vega waived any objection to the VE's testimony when she did not object during the hearing.**

The Commissioner argues Ms. Vega waived her right to object to the VE's testimony by failing to do so at the administrative hearing before the ALJ. (Comm'r Br., ECF #15, PageID 724). Ms. Vega replies that counsel did question the VE on the subject during the hearing and raised the issue in a post-hearing memorandum with objections to the VE's testimony. (Pl.'s Reply, ECF #16, PageID 730).

The failure to object to evidence, or failure to cross-examine a VE about a topic at the hearing, precludes the claimant from later raising the issue. *Zimmerman v. Comm'r of Soc. Sec.*, 1:18-CV-1233, 2019 WL 4736267 (N.D. Ohio Sept. 27, 2019) (collecting cases). As noted above, the cross-examination of the VE on behalf of Ms. Vega was not sufficient to alert the ALJ to a conflict that was not apparent. Having not objected to the VE's testimony at the administrative hearing, and having failed to cross-examine the VE in a manner that adequately preserved Ms. Vega's objection as to whether the VE's testimony was consistent with the DOT, I conclude that Ms. Vega has waived her right to object to the VE's testimony. Because the alleged inconsistencies were not pointed out at the hearing, the ALJ was permitted to rely on the VE's testimony.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I recommend the District Court **AFFIRM** the Commissioner's decision denying DIB and SSI.

Dated: December 3, 2021

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

***ANY OBJECTIONS*** to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).